F I L E D
United States Court of Appeals
Tenth Circuit

MAR 7 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

BLUE CIRCLE CEMENT
COMPANY, INC.,

    Petitioner/Cross-Respondent,

v.

NATIONAL LABOR
RELATIONS BOARD,

    Respondent/Cross-Petitioner.

No. 96-9503
(NLRB Nos. 17-CA-16104
and 17-CA-16279)

_____

JUDGMENT[*]

_____

Before KELLY, HOLLOWAY and WEIS,[**] Circuit Judges.

_____

THIS CAUSE came on to be heard upon a petition filed by Blue Circle Cement

Company, Inc., to review an order of the National Labor Relations Board in Board Case

Nos. 17-CA-16104 and 17-CA-16279, issued on December 14, 1995, and upon a cross-

application filed by the National Labor Relations Board to enforce said Order.  The Court

heard argument of respective counsel on November 19, 1996, and has considered the

briefs and transcript of record filed in this case.  On January 24, 1997, the Court, being

_____

[*]    Pursuant to Fed.R.App.P. 19.

[**]    The Honorable Joseph F. Weis, Jr., United States Senior Circuit Judge for
the United States Court of Appeals for the Third Circuit, sitting by designation.

fully advised in the premises, handed down its opinion granting in part and denying in part enforcement of an Order of the Board. In conformity therewith, and in the absence of comment from Petitioner, it is hereby:

ORDERED AND ADJUDGED by the Court that Petitioner, Blue Circle Cement Company, Inc., Tulsa, Oklahoma, its officers, agents, successors, and assigns, shall:

1.      Cease and desist from:

(a)      Refusing to bargain in good faith with the Union as the exclusive representative of its employees with respect to rates of pay, wages, hours of employment, and other terms and conditions of employment, in an appropriate unit consisting of:

> All production and maintenance employees employed at the Petitioner's Tulsa, Oklahoma plant, but excluding plant executives, professional engineers, machine shop foremen, oiling supervisor, electrical foreman, instrumentation engineer, guards, watchmen, and supervisors as defined in the National Labor Relations Act, as amended.

(b)      Making unilateral changes in the break schedule, the policy governing the scheduling of vacations, or work schedules, without prior notice to or bargaining with the Union as the exclusive representative of the bargaining unit described above.

(c)      Dealing directly with employees in the unit described above with respect to their rates of pay, wages, hours, or other terms and conditions of employment.

2.      Take the following affirmative action necessary to effectuate the policies of the Act:

2

(a)     Notify and give the Union an opportunity to bargain about any changes in the schedule of breaks during plant shutdowns, the scheduling of vacations, and the work schedule of the first shift of the maintenance department.

(b)     On the Union's request, rescind the break schedule promulgated during the 1992 plant shutdown period.

(c)     On the Union's request, rescind the vacation scheduling policy promulgated for bargaining unit employees, on or about March 1, 1992.

(d)     On the Union's request, rescind the 11:00 p.m. starting time of the maintenance department's first shift, and restore the 12:01 a.m. starting time.

(e)     Preserve and, on request, make available to the Board or its agents for examination and copying, all payroll records, social security payment records, timecards, personnel records and reports, and all other records necessary to analyze the amount of backpay due under the terms of this Judgment.

(f)     Post at its plant in Tulsa, Oklahoma, copies of the attached notice marked "Appendix." Copies of the notice, on forms provided by the Regional Director for Region 17 of the National Labor Relations Board (Overland Park, Kansas), after being signed by the Petitioner's authorized representative, shall be posted by Petitioner immediately upon receipt and maintained for 60 consecutive days in conspicuous places including all places where notices to employees are customarily posted. Reasonable steps

3

shall be taken by Petitioner to ensure that the notices are not altered, defaced, or covered by any other material.

      (g)     Notify the said Regional Director, in writing, within 20 days from the date of this Judgment, of what steps Petitioner has taken to comply.

    IT IS FURTHER ORDERED that each party shall bear its own costs.


             Entered for the Court


             Joseph F. Weis, Jr.
             Circuit Judge

APPENDIX

NOTICE TO EMPLOYEES
POSTED PURSUANT TO A JUDGMENT OF
THE UNITED STATES COURT OF APPEALS
ENFORCING AN ORDER OF THE NATIONAL
LABOR RELATIONS BOARD

An Agency of the United States Government

The National Labor Relations Board has found that we violated the National Labor Relations Act and has ordered us to post and abide by this notice.

Section 7 of the Act gives employees these rights.

> To organize
> To form, join, or assist any union
> To bargain collectively through representatives of their own choice
> To choose not to engage in any of these concerted activities.

WE WILL NOT refuse to bargain in good faith with United Cement, Lime, Gypsum & Allied Workers Division, International Brotherhood of Boilermakers, Iron Ship Builders, Forgers and Helpers, AFL-CIO, Local D421 as the exclusive representative of our employees with respect to rates of pay, wages, hours of employment, and other terms and conditions of employment, in an appropriate unit consisting of:

> All production and maintenance employees employed at our Tulsa, Oklahoma plant, but excluding plant executives, professional engineers, machine shop foremen, oiling supervisor, electrical foreman, instrumentation engineer, guards, watchmen, and supervisors as defined in the National Labor Relations Act, as amended.

WE WILL NOT make unilateral changes in the break schedule, the policy governing the scheduling of vacations, or work schedules, without prior notice to or bargaining with the Union as the exclusive representative of the bargaining unit described above.

WE WILL NOT deal directly with our employees in the unit described above with respect to their rates of pay, wages, hours, or other terms and conditions of employment.

WE WILL notify and give the Union an opportunity to bargain about any changes in the schedule of breaks during plant shutdowns, the scheduling of vacations, and the work schedule of the first shift of the maintenance department.

WE WILL, on the Union's request, rescind the break schedule promulgated during the 1992 plant shutdown period.

WE WILL, on the Union's request, rescind the vacation scheduling policy promulgated on or about March 1, 1992.

WE WILL, on the Union's request, rescind the 11 p.m. starting time of the maintenance department's first shift, and restore the 12:01 a.m. starting time.

**BLUE CIRCLE CEMENT COMPANY, INC.**